

# EUNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DARLENE K. HARRIS,            )<br>                              )<br>     **Plaintiff,**             )<br>                              )<br>     v.                        )<br>                              )<br> BP CORPORATION NORTH         )<br> AMERICA INC. and             )<br> METROPOLITAN LIFE            )<br> INSURANCE COMPANY            )<br>                              )<br>     **Defendants.**           )  | **No. 15 C 10299**<br><br>**Chief Judge Rubén Castillo** |

## MEMORANDUM OPINION AND ORDER

Darlene Harris ("Plaintiff") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against BP Corporation North America Inc. ("BP") and Metropolitan Life Insurance Company ("MetLife"), seeking payment on a life insurance policy she maintained on her late ex-husband. Presently before the Court is BP's motion to transfer venue to the U.S. District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). (R. 19, BP's Mot.) For the reasons set forth below, BP's motion is denied and this case will be transferred to the U.S. District Court for the Southern District of Illinois.

## RELEVANT FACTS

Plaintiff, a resident of Centralia, Illinois, worked for BP in southern Illinois until her retirement in 1999. (R. 1, Compl. ¶¶ 5, 12.) As an employment benefit, BP offered a life insurance plan and a spousal coverage plan to Plaintiff. (*Id.* ¶ 9.) Through this plan, Plaintiff purchased a $100,000 life insurance policy on her then-husband, Jimmie Harris. (*Id.*) Plaintiff was the sole beneficiary of the policy and BP deducted the policy premiums from her wages. (*Id.*

¶ 10.) Plaintiff alleges that this policy, sponsored and administered by BP, was structured as an employee welfare benefit plan under ERISA. (*Id.* ¶ 6.) She further claims that MetLife acted as the policy's claim administrator and funded the plan. (*Id.* ¶ 7.)

Plaintiff and her husband divorced in 1992, and Plaintiff notified the BP human resources department of the divorce shortly thereafter. (*Id.* ¶ 11.) Plaintiff alleges that BP continued to deduct policy premiums from her wages without indicating that there would be any issue with maintaining the spousal coverage policy. (*Id.*) Plaintiff retired in 1999, having continued paying premiums for the seven years following her divorce. (*Id.* ¶ 12.)

Plaintiff claims that after her retirement, MetLife issued billing statements for the premiums due to maintain the spousal coverage policy in full force and effect. (*Id.*) Plaintiff continued paying premiums for the policy for another 15 years until Jimmie Harris died on December 8, 2014. (*Id.*) She subsequently filed a claim for life insurance benefits under the policy, but MetLife denied her claim in March 2015. (*Id.* ¶ 15.) Plaintiff alleges that MetLife based its denial on a provision of the policy that "purports to end spousal coverage in the event of divorce, and would have ended Jimmie Harris's coverage consequent to his 1992 divorce from Plaintiff." (*Id.*) Plaintiff claims that she had never received a copy of the full policy; instead, she relied on the Summary Plan Description ("SPD") she had received, which was intended to set forth the basic provisions of the policy. (*Id.* ¶ 16.) The SPD contained a clause that allowed a covered spouse to continue the policy after a divorce by continuing to pay premiums directly to MetLife. (*Id.*; R. 1-1, Ex. A at 24.) Plaintiff alleges that she relied upon this provision and MetLife's acceptance of premiums as the basis of her belief that she could maintain coverage on her ex-husband. (*Id.* ¶ 16.)

Plaintiff filed her complaint in this District in November 2015. (R. 1, Compl.) Plaintiff claims that MetLife breached the terms of the policy and that she is thus entitled to indemnity pursuant to 29 U.S.C. § 1132(a)(1)(B). (*Id.* ¶ 17.) Alternatively, she seeks equitable relief, either by reforming the plan to conform to the terms set forth in the SPD, by estopping MetLife from denying coverage, or by granting Plaintiff an equitable surcharge remedy. (*Id.*) Regarding BP, Plaintiff argues that the employer had a fiduciary duty to notify her that her divorce left her ineligible to continue the spousal coverage policy and to cease deducting premiums from her wages. (*Id.* ¶ 20.) She alleges that BP either negligently or intentionally misrepresented her eligibility and that she reasonably relied on that misrepresentation to her detriment. (*Id.*) Accordingly, she seeks indemnity from BP in the amount of the policy benefits should MetLife not be obligated to pay these benefits. (*Id.* ¶ 21.)

In January 2016, BP filed the present motion to transfer venue under Section 1404(a). (R. 19, BP's Mot.) BP argues that the Consolidated Welfare Benefit Plan (the "Plan"), of which Plaintiff's spousal life insurance policy is a component, includes a forum-selection clause providing that "the only proper venue for any person to bring a suit against the Plan or to recover Benefits shall be in federal court in Harris County, Texas." (R. 20, BP's Mem. at 2; R. 19-1, BP's Mot., Ex.A at 22.) As part of the Plan, BP argues that the forum-selection clause should be enforced in the absence of extraordinary circumstances. (R. 20, BP's Mem. at 3.)

In her response, Plaintiff contends that the forum-selection clause should not be enforced. (R. 31, Resp.) First, she argues that it is contrary to the plain language of ERISA's venue provision, 29 U.S.C. § 1132(e)(2), and that it contravenes ERISA's statutory intent. (*Id.* at 4-9.) Second, she argues that the forum-selection clause was not included in the SPD and was never

disclosed to her, and thus BP is estopped from enforcing it. (*Id.* at 9-12.)[1] In reply, BP argues that two recent federal court decisions provide highly persuasive authority that forum-selection clauses are enforceable based on ERISA's statutory text and policy. (R. 32, Reply at 3-7 (quoting *Smith v. AEGON Cos. Pension Plan*, 769 F.3d 922 (6th Cir. 2014); *Mroch v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 2014-cv-4087, 2014 WL 7005003 (N.D. Ill. Dec. 10, 2014)).)

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In considering the convenience of the parties, relevant factors include "the availability of and access to witnesses, and each party's access to and distance from resources in each forum," as well as "the location of material events and the relative ease of access to sources of proof." *Research Automation, Inc. v. Schrader-Bridgport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The "interests of justice" analysis includes such factors as docket congestion, each court's familiarity with the relevant law, the desirability of resolving the case in each setting, and the relationship of each community to the controversy. *Id.* "Under § 1404(a), the plaintiff's choice of forum is usually given substantial weight . . . particularly where it is also the plaintiff's home forum." *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015) (citation and internal quotation marks omitted).

---

[1] Plaintiff additionally denies that "such a clause [is] even applicable with respect to Plaintiff's claims against MetLife" and thus it should not be enforced. (R. 31, Resp. at 11.) In its answer, however, MetLife sets forth as its first affirmative defense that the Plan sets venue in federal court in Harris County, Texas, and that the case should be transferred there pursuant to Section 1404(a). (R. 22, MetLife's Answer at 8.) Because MetLife does in fact contend that the forum-selection clause should be enforced, the Court does not consider this argument further.

4

However, when there is a valid forum-selection clause, it "should be given controlling weight in all but the most exceptional cases" notwithstanding the normal Section 1404(a) analysis. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013) (internal alterations and quotation marks omitted). In this event, "the plaintiff's choice of forum merits no weight" and "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 581-82. Courts may not consider arguments about the parties' private interests because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582.

## ANALYSIS

### I.   Forum-Selection Clauses Under ERISA

BP argues that transfer is appropriate in this case because the Plan contains a clause specifying that any related suit must be brought in Harris County, Texas, which falls within the federal Southern District of Texas. Plaintiff contends that this forum-selection clause is void because it conflicts with ERISA's venue provision. The Court will first assess the validity of the forum-selection clause under ERISA, as this dictates the relevant Section 1404(a) analysis.

Even though forum-selection clauses are facially valid as a general matter, the Seventh Circuit Court of Appeals and the U.S. Supreme Court have acknowledged that they may be unenforceable:

> (1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (internal citations omitted) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Plaintiff does not argue that the forum-selection clause in this case was the result of fraud, nor does she suggest that she would be forced to abandon her suit if the clause were enforced. Thus, the Court must determine whether enforcement of the clause conflicts with the strong public policy embodied in ERISA to determine whether the clause is enforceable.[2]

ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citation and internal quotation marks omitted). While ERISA is complex, it is driven by two primary aims: to protect "the interests of participants in employee benefit plans and their beneficiaries" by establishing standards and guaranteeing "ready access to the Federal courts," 29 U.S.C. § 1001(b), and "to enable employers to establish a uniform administrative scheme" so that plans are not "subject to different legal obligations in different States," *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001). In other words, "ERISA represents a 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan" and "assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime" of remedies. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citations omitted).

ERISA provides that an action under the statute "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be

---

[2] Plaintiff also argues that the forum-selection clause is unenforceable under Section 1104(a)(1)(D), which requires plan fiduciaries to administer the plan consistently with ERISA's provisions. (R. 31, Resp. at 5.) While this Court's view is that the clause is in fact inconsistent with Section 1132(e)(2), this finding suffices to render it unenforceable without relying on this second statutory provision. Accordingly, it requires no further discussion.

found." 29 U.S.C. § 1132(e)(2). For purposes of ERISA, the Seventh Circuit has held that "[a] fund can be found in a judicial district if it has the sort of 'minimum contacts' with that district that would support the exercise of personal jurisdiction under the rule of *International Shoe*." *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 810 (7th Cir. 2002) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)). For minimum contacts to exist, the maintenance of the suit must not offend "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, and the defendant "must have purposefully availed himself of the forum state, such that he should reasonably anticipate being haled into court there," *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (internal quotation marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).[3]

The majority of courts to consider the question have held that forum-selection clauses are not inconsistent with Section 1132(e)(2) or any other provision of ERISA. *See, e.g., Smith v. AEGON Cos. Pension Plan*, 769 F.3d 922 (6th Cir. 2014); *Mroch v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 14-cv-4087, 2014 WL 7005003 (N.D. Ill. Dec. 10, 2014); *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855 (N.D. Cal. 2010); *Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430 (S.D.N.Y. 2007). However, several courts have found that forum-selection clauses cannot be enforced in ERISA cases. *See, e.g., Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F. Supp. 2d 901 (N.D. Ill. 2013); *Nicolas v. MCI Health & Welfare Plan No. 501*, 453 F. Supp. 2d 972 (E.D. Tex. 2006); *Wellmark, Inc. v. Deguara*, No. 4:02-CV-40534, 2003 WL 21254637 (S.D. Iowa May 28, 2003). Neither the U.S. Supreme Court nor the Seventh

---

[3] The complaint contains no allegations indicating that venue is proper in the Northern District of Illinois. In her response to BP's motion, however, she claims that MetLife "maintains a claim office in Mount Prospect, Illinois," which sits within this District. (R. 31, Resp. at 5.) In light of BP's choice to proceed under Section 1404(a) and not Section 1406, which governs transfer when venue is improper in the transferor court, the Court assumes that BP consents that venue is proper in this District for the purpose of this motion.

Circuit has weighed in on this issue, and the two cases from this District that have addressed this question came to different conclusions.[4]

BP argues that the Plan's forum-selection clause does not conflict with the plain meaning of Section 1132(e)(2). (R. 32, Reply at 3-4.) Noting that the Section 1132(e)(2) states that a lawsuit "*may* be brought" in any of the listed districts, BP suggests that it is merely permissive, delineating each district where suit may be brought without guaranteeing the plaintiff a further choice between them. (*Id.* at 3 (emphasis added).) Because the forum-selection clause requires lawsuits to be brought in the Southern District of Texas, where BP is headquartered and administers the Plan, BP argues that restricting the venue to one of Section 1132(e)(2)'s "permissive" options is consistent with ERISA. (*Id.* at 3-4.) In support of its position, BP merely notes the statutory language, observes that Section 1132(e)(2) does not mention or preclude the use of a forum-selection clause, cites several cases finding the venue provision to be permissive, and asserts that the venue provision is "plain and unambiguous." (*Id.* at 3.)

BP's presentation of this issue mirrors the approach of a court in this District in *Mroch v. Sedgwick Claims Management Services, Inc.*, 2014 WL 7005003. In *Mroch*, our esteemed colleague found that "[t]he language of the statute here is plain and unambiguous" because it stated that suit "*may* be brought" in any of the listed locations. *Mroch*, 2014 WL 7005003, at *3 (emphasis in original). The court declined to endorse the plaintiff's argument that the heading of Title I, "Protection of Participants Rights," established that forum selection is a right, noting that

---

[4] The Department of Labor, the agency tasked with interpreting ERISA, has in the past filed amicus briefs in three cases. *See, e.g.*, Brief for the United States as Amicus Curiae, *Smith v. Aegon Cos. Pension Plan*, No. 14-1168 (U.S. Nov. 25, 2015), available at https://www.dol.gov/sol/media/briefs/smith_2015-11-25.pdf. The Department has pursued no enforcement actions and issued no regulations or opinion letters relating to forum-selection clauses, and these amicus briefs are the only indication that the agency has adopted this position. *See Smith*, 769 F.3d at 928-929 (giving no weight to the Department's briefs). Because the Department has only recently adopted its views regarding forum-selection clauses and has not taken more formal steps to establish them, its views are not binding. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011). The Court nevertheless finds its views persuasive.

a statute's title "does not limit the plain meaning of the text." *Id.* (internal quotation marks and citation omitted). The court offered no further reasoning to support its conclusion that Section 1132(e)(2) is plainly permissive and declined to examine "extrinsic methods of statutory construction" because the statute is unambiguous. *Id.*

With respect, however, this Court is not convinced that Section 1132(e)(2) is unambiguously permissive such that ERISA would allow the parties to further narrow a plaintiff's choice of venue. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Those courts that have found Section 1132(e)(2) to be permissive rely on its use of the word "may" and reason that, because Congress did not explicitly preclude forum-selection clauses through some other language, they must be permissible. *See, e.g., Price v. PBG Hourly Pension Plan*, No. 12-15028, 2013 WL 1563573, at *2 (E.D. Mich. Apr. 15, 2013) ("The *may* of § 1132(e)(2) does not mean *cannot*. Congress provided that an action *may* be brought in several venues. Congress did not provide that private parties *cannot* narrow the options to one of these venues."). However, this language may just as easily be read as providing a right to ERISA plaintiffs to file their action in the most suitable of these locations. *See, e.g., Coleman*, 920 F. Supp. 2d at 906 ("[Section] 1132(e)(2) is not a neutral provision merely describing the venues in which ERISA actions can be heard, but is rather intended to grant an affirmative right to ERISA participants and beneficiaries."); *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1525 (11th Cir. 1987) (holding that permitting a plan administrator to determine the venue of an ERISA suit would allow that "the sword that Congress intended participants/beneficiaries to wield in asserting their rights could instead be turned against those whom it was designed to aid."). While

the language of the statute does not unambiguously preclude forum-selection clauses on its face, neither does it unambiguously state that parties are entitled to restrict the venue options provided for under Section 1132(e)(2).[5]

Considering "the broader context of the statute as a whole," the Court finds that the venue provision is at least ambiguous regarding the permissibility of forum-selection clauses. As noted above, ERISA explicitly states that one of its primary purposes is to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for . . . ready access to the Federal courts." 29 U.S.C. § 1001(b). Additionally, "ERISA's legislative history explains that Congress intended its enforcement provisions 'to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary duties.' " *Coleman*, 920 F. Supp. 2d at 906 (quoting H.R. Rep. No. 93-533, 93d Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4655). ERISA's broader context suggests that it was intended to ensure that beneficiaries could pursue their rights without inordinate inconvenience.

BP, citing the Sixth Circuit Court of Appeals's decision in *Smith*, argues that the forum-selection clause does not deprive Plaintiff of "ready access to the Federal courts" because it "explicitly directs suits to be filed in a federal court"—namely, in the Southern District of Texas.

---

[5]*Mroch* also considered a provision of the Federal Employer Liability Act ("FELA") that was discussed in *Boyd v. Grand Truck W.R. Co.*, 338 U.S. 263 (1949), which held that the choice of venue under that Act was a substantive right that was precluded by the statute. The court found that this provision, which states that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which *shall be* to enable any common carrier to exempt itself from any liability created by this chapter, *shall* to that extent be void," "undermines Plaintiff's argument." *Mroch*, 2014 WL 7005003, at *3 n.1 (emphasis in original) (quoting 45 U.S.C. § 55). *Mroch* fails to recognize that, just as with ERISA, the venue provision of FELA states that "an action *may be brought* . . . in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." 45 U.S.C. § 56 (emphasis added). Section 55 of FELA is actually most analogous to Section 1104(a)(1)(D) of ERISA, which provides that "a fiduciary *shall* discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter." 29 U.S.C. § 1104(a)(1)(D) (emphasis added).

(R. 32, Reply at 4 (citing *Smith*, 769 F.3d at 931).) This Court declines to read "*ready* access" out of ERISA's stated goal of providing "ready access to the Federal courts." Although BP is correct that setting venue in the Southern District of Texas literally allows access to federal court, forcing Plaintiff to litigate her claim in an incovenient location seems hardly consistent with ERISA's purpose of removing procedural obstacles that have "hampered effective enforcement of fiduciary duties."

This view has been endorsed by the Eleventh Circuit Court of Appeals. In *Gulf Life*, that court had to decide whether a plan administrator could file a declaratory judgment action so as to lay venue in the forum of its own choosing rather than that preferred by the beneficiary seeking to sue under ERISA. 809 F.2d 1520. Although *Gulf Life* did not involve a forum-selection clause, it did reflect upon ERISA's underlying purpose and legislative history. As the Circuit explained:

> [U]nder Gulf Life's view of section 1132, if Gulf Life were headquartered in Guam it would be able to force Arnold to litigate his benefit plan rights in that forum. Although this states the case in its most extreme, it is not unusual for a national corporation to be headquartered in New York or in California. We believe that ERISA's legislative history unquestionably demonstrates that Congress did not intend to allow a fiduciary to force a plan participant/beneficiary who worked for a company for 30 years in Maine and who files a claim for benefits with that company, to be required to litigate his claim in Los Angeles.

*Gulf Life*, 809 F.2d at 1525 n.7. Rather than adopting the Sixth Circuit's narrow reading of "ready access," the Court finds the Eleventh Circuit's interpretation of ERISA's policy more persuasive. Even without the venue provision, a plaintiff would be able to bring an ERISA suit in some federal court simply by virtue of federal question jurisdiction. 28 U.S.C. § 1331. If this were as far as Congress's intention to provide plaintiffs "ready access" to federal court reached, then there would have been no reason to specifically provide them the option to file in their

home district in the first place. The Court concludes that the most reasonable interpretation of ERISA's strong public policy is to guarantee plaintiffs the option of bringing suit in a convenient forum without forcing them to bear the heavy burden of showing that litigating elsewhere would literally foreclose any access to any federal court.

BP further argues that permitting forum-selection clauses promotes different policies of ERISA, in particular its "goal of enabling employers to establish a uniform administrative scheme so that plans are not subject to different legal obligations in different States." (R. 32, Reply at 4 (quoting *Smith*, 769 F.3d at 931-32).) While this is indeed a major goal of the statute, it does not support requiring plan beneficiaries to travel to distant courts to pursue their rights. Employers are free to include choice-of-law provisions in ERISA plans, which would not conflict with any ERISA provision.[6] Because this purpose does not speak to the physical forum in which the plan should be interpreted, the Court does not find that it informs consideration of Section 1132(e)(2)'s meaning with respect to forum-selection clauses. *See Coleman*, 920 F. Supp. 2d at 909 ("There is no reason that a plan's choice-of-law designation cannot coexist with

---

[6] The Court notes that the Plan in fact contains such a choice-of-law provision. (*See* R. 19-1, Ex. A, at 20 ("This Plan shall be construed, administered and governed in all respects under applicable federal law, and to the extent that the Plan Administrator determines federal law has been finally judged inapplicable in any particular circumstance, under the laws of the State of Texas as to such a circumstance.").)

a participant's or beneficiary's choice from among a variety of venues when enforcing his or her ERISA rights—the entitlement conferred by § 1132(e)(2).").[7]

Even if ERISA's policies of beneficiary protection and administrative efficiency conflicted, the statute's public policy would be best determined to be an appropriate balance of these interests. *See Ricci v. DeStefano*, 557 U.S. 557, 580 (2009) (In cases where "statutes and principles point in different directions," courts should "interpret the statute to give effect to both provisions where possible."); *Karlin v. Foust*, 188 F.3d 446, 470 (7th Cir. 1999) ("Whenever a court is confronted with apparently conflicting legislation, its goal is to ascertain the intent of the legislative body and construe the law accordingly."). Employers and the insurance companies that administer plans are, for the most part, corporations with access to the resources necessary to defend suits in the districts in which their beneficiaries work. The Court is mindful that defending all suits in one forum would cost less and thus preserve funds for the fiscal stability of the plans, but it is not likely that these corporate parties will be forced to default in ERISA actions because they cannot afford to litigate in the various districts to which they deliver plan services. Beneficiaries, however, are frequently financially disadvantaged parties. *See Smith*, 769 F.3d at 935 (Clay, J., dissenting) ("[C]laimants in suits for plan benefits—retirees on a limited budget, sick or disabled workers, widows and other dependents—are often the most vulnerable

---

[7] A related argument, frequently arising in other courts' consideration of forum-selection clauses under ERISA although not expressly raised by BP, concerns the enforcement of arbitration clauses under ERISA. A number of circuits have enforced ERISA plan provisions requiring mandatory arbitration. *See, e.g., Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 117-22 (2d Cir. 1991) ("ERISA's text and legislative history do not support a conclusion that Congress intended to preclude arbitration of [ERISA] claims[.]"). The majority in *Smith* found that it would be "illogical" if under ERISA "a plan may preclude venue in federal court entirely, but a plan may not channel venue to one particular federal court." *Smith*, 769 F.3d at 932. As the dissent in *Smith* observed, however, "[courts] enforce arbitration agreements with regard to federal statutory claims not based on some general policy favoring forum selection clauses, but because that is what the Federal Arbitration Act . . . requires." *Id.* at 935 (Clay, J., dissenting). This Court sees no conflict in recognizing the mandatory nature of the FAA, another federal statute, without giving the same weight to a common-law presumption in favor of forum-selection clauses. Thus, the Court finds that the enforceability of arbitration clauses under ERISA has no bearing on the enforceability of conventional forum-selection clauses.

individuals in our society, and are the least likely to have the financial or other wherewithal to litigate in a distant venue."). If forced to sue across the country or not at all, it would not be surprising if many were priced out of pursuing their rights. ERISA's dual values are best served by preserving plaintiffs' rights to sue in any of those venues set forth in Section 1132(e)(2) and permitting plans to specify choice of law to prevent plans from being governed by numerous states' laws.

Indeed, any other interpretation of ERISA would seem to lead irrevocably back to the "jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary duties." Plans under ERISA are typically negotiated between insurers and employers. *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 757 (7th Cir. 1999). If only these two parties were at issue, then enforcing forum-selection clauses as freely negotiated agreements might be supported by public policy. As ERISA also governs suits by plan beneficiaries, though, policy militates against enforcing these clauses. Employees are merely provided the option of signing on to their plans or not when they begin their employment without any chance to weigh the costs and benefits of setting the venue for any suit in a distant district. The Court declines to endorse the legal fiction that all terms of ERISA plans are freely negotiated by beneficiaries and instead, mindful that ERISA exists in large part to protect these parties, it finds that ERISA has already codified and guaranteed the appropriate venues for plan litigation. *See Coleman*, 920 F. Supp. 2d at 908 (If employees must either forego the benefit plan or waive Section 1132(e)(2) rights, then "a purported 'right' subject to such conditions is no right at all. If that type of 'waiver' were permitted, an employer could obliterate any ERISA requirements merely by including a term in its benefits plan that contradicts a statutorily established right. That would make ERISA no better than an unenforceable wish list, flouting the will of Congress

completely."); *see also Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000) ("[C]ourts treat an ERISA plan as a special kind of contract, in order to confer greater protections on one of the parties, namely the participant or beneficiary, than on the other, the plan administrator[.]"); *Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052 (7th Cir. 1987) ("A Congress committed to the principles of freedom of contract would not have enacted a statute that interferes with pension arrangements voluntarily agreed on by employers and employees.").

If the negotiating parties are permitted to include mandatory forum-selection clauses in ERISA plans, it is likely that a slippery-slope narrowing of Section 1132(e)(2) will follow. After all, both insurers and employers would be best served by including such a clause in any plan for cost-saving purposes. As these are the parties who negotiate the plans, it would be unsurprising if they agreed on this issue in nearly every instance and thus forum-selection clauses would become universally adopted. This would essentially eliminate Section 1132(e)(2)'s guarantee that plaintiffs may sue where the breach occurred.[8] *See Nicolas*, 453 F. Supp. 2d at 974 (If courts permitted enforcement of forum-selection clauses in ERISA cases, it "would encourage a flood of new, non-negotiated 'plans' containing forum-selection clauses. This floodgate of new plans would severely limit many potential plaintiffs from having ready access to the federal courts[.]"). As this result would likely lead to the near-universal inclusion of forum-selection clauses and thus a narrowing of beneficiaries' ability to protect their rights as provided under 1132(e)(2), the Court declines to endorse it.

---

[8] In contrast, guaranteeing that all the locations specified in Section 1132(e)(2) are available to plaintiffs would not functionally eliminate any of its clauses of any application. While beneficiaries might typically sue in their home districts, many ERISA suits are between employers and insurers. These parties may find it more convenient to litigate where the other party is found or where the plan is administered, thus giving meaning to the entirety of Section 1132(e)(2).

After careful consideration, the Court finds that the forum-selection clause contravenes the strong public policy set forth in ERISA. The plain language of Section 1132(e)(2) is ambiguous, but the overriding purpose and legislative history of ERISA is not. For these reasons, the Court finds that the parties' forum-selection clause is unenforceable.[9] *Bonny*, 3 F.3d at 160; *M/S Bremen*, 407 U.S. at 15.

## II.    Section 1404(a) Transfer

Having found the forum-selection clause to be unenforceable, the Court must now determine whether transfer is appropriate and, if so, to what court. Although *Atlantic Marine* counsels nearly total deference to forum-selection clauses, the Supreme Court was clear that this deference is only appropriate when the clause is valid. *Atl. Marine*, 134 S. Ct. at 581 n.5 ("Our analysis presupposes a contractually *valid* forum-selection clause." (emphasis added)). With no valid forum-selection clause here, the Court will apply a standard Section 1404(a) analysis. The Court finds that the most appropriate venue for this case is in the Southern District of Illinois, where Plaintiff resides and where the breach occurred.

When considering transfer under Section 1404(a), courts must ensure that venue is proper in both the transferor and transferee districts, that transfer is for the convenience of the parties and witnesses, and that it is in the interests of justice. *Taylor*, 94 F. Supp. 3d at 945. As discussed above, the Court assumes that BP agrees that venue is proper in this District based on its decision to seek a transfer under Section 1404(a) rather than under Section 1406, which applies when venue is improper. The only apparent basis for venue in this District is MetLife's alleged maintenance of a claims-processing office in Mount Prospect, Illinois. (R. 31, Resp. at 5.)

---

[9] Because this Court finds that the forum-selection clause is unenforceable as a matter of law, it need not consider Plaintiff's alternative argument that BP is estopped from enforcing it due to lack of notice. (R. 31, Resp. at 9-12.)

16

The Court must also consider the convenience of the parties, which includes "the availability of and access to witnesses, and each party's access to and distance from resources in each forum" as well as "the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978. This prong strongly favors the Southern District of Illinois. As Plaintiff explains in her response, "the events material to this lawsuit relevant to BP transpired in Marion County, Illinois, where Plaintiff lives and worked." (R. 31, Resp. at 4-5.) Marion County sits squarely within the Southern District of Illinois and is approximately 250 miles from this courthouse. Although filed in this District, the complaint itself states that "[v]enue is proper in the Southern District of Illinois." (R. 1, Compl. ¶ 3.) No material events in this case occurred in either this District or in the Southern District of Texas. There is no reason to believe that any relevant witnesses reside in either location, nor that there are any resources that would be more readily accessible to any party in either of those locations. The Northern District of Illinois is particularly inapt under this consideration in that it would be inconvenient for *all* parties and witnesses; no events occurred in this District and litigating this action here would require Plaintiff, BP, MetLife, and any potential witnesses alike to travel several hundred miles with some regularity. Because the relevant events in this case all occurred in Marion County and this is also Plaintiff's home forum, the Court finds that the convenience of the parties strongly favors the Southern District of Illinois.

Regarding the interests-of-justice prong, the Court considers it to be balanced between the Southern District of Illinois and the Southern District of Texas. There is no evidence in the record that there is a significant difference in docket congestion between the three potential venues, and the Court presumes that each district court is equally capable of resolving an ERISA claim. The complaint includes no state-law claims, so familiarity with Illinois law is irrelevant.

17

Proceeding in the Southern District of Texas would be desirable in that it might allow BP, which administers the plan, to conserve plan funds, but Marion County is the only community with any particular relationship to the controversy. The Northern District of Illinois, which shares no connection to the events in this case and offers no potential efficiency gains, is not supported as a venue by any interests of justice.

Therefore, the Court concludes that the most appropriate venue for this case is in the Southern District of Illinois. Substantial weight is accorded to Plaintiff's choice of venue in this District, but as Plaintiff herself admits that this District shares no relation to the events at issue in the case and proceeding here would manifestly inconvenience every relevant party, the Court nonetheless finds that transfer is appropriate.

## CONCLUSION

For the foregoing reasons, BP's motion to transfer to the Southern District of Texas (R. 19) is DENIED. This action is TRANSFERRED to the U.S. District Court for the Southern District of Illinois, East St. Louis Division.

ENTERED: _____
**Chief Judge Rubén Castillo
United States District Court**

**Dated: July 8, 2016**